Hartley T. Bernstein, Esq.
BERNSTEIN CHERNEY LLP
955 Park Avenue, 5th Floor
New York, N.Y. 10028
(212) 381-9684 – Phone
(646) 304-9535 – Fax
hbernstein@bernsteincherney.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

HASAN OMERAGIC,

               Plaintiff                           Case # 1:22-cv-8259

-against –

PINNACLE GROUP N.Y. LLC,
24 SHERMAN LLC, GMP
HOLDINGS LLC, JOEL WEINER,
and HARRY HIRSCH,

               Defendants

_____

## **COMPLAINT**

Plaintiff Hasan Omeragic ("Omeragic"), by his attorneys, Bernstein Cherney LLP, for his

Complaint against Defendants Pinnacle Group N.Y. LLC ("Pinnacle Group"), 24 Sherman LLC

("Sherman"), GMP Holdings, LLC ("GMP") [Pinnacle Group, Sherman and GMP are sometimes

referred to herein ss the "Corporate Defendants"], Joel Weiner ("Weiner") and Harry Hirsch

("Hirsch") [Weiner and Hirsh are sometimes referred to collectively as the "Individual

Defendants], collectively "Defendants," alleges as follows:

-1-

## **NATURE OF THE ACTION**

1.     Plaintiff brings this action to recover damages for unpaid wages, unpaid overtime wages, unpaid promised wages, breach of contract, liquidated damages and reasonable attorneys' fees and costs under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 et seq.) ("FLSA"), and the various regulations and policy statements promulgated by the U.S. Department of Labor and codified in Title 29 of the Code of Federal Regulations, 29 C.F.R. 500 et seq.; the New York Labor Law, including, but not limited to, Articles 6 and 19 ("New York Labor Law" or "NYLL"), and the various wage orders promulgated by the New York State Department of Labor and codified in 12 N.Y.C.R.R. §§ 135-146; and the common law of the State of New York.

2.     Plaintiff also brings this action for Defendants' failure to comply with the New York Labor Law ("NYLL") §195, which as of February 1, 2011 has mandated that employers, Defendants included, provide annual wage notices during the period of employment of an employee which specifies, among others, the employee's wage rate, the frequency of wage payments, the designated pay day and other information set forth in the statute. Plaintiff seeks statutory weekly damages of either $25.00 or $50.00 as the case may be, up to a maximum of $2,500.00 or $5,000.00.

3.     Plaintiff brings this claim under the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. §621, et seq., and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. §296, et seq. Defendants have discriminated against Plaintiff on account of his age. Plaintiff has notified the Equal Employment Opportunity Commission ("EEOC") of his intention to file this claim, thirty (30) days or more in advance of filing.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) (Fair Labor Standards Act), 28 U.S.C. § 1337 (interstate commerce), and 28 U.S.C. § 1331 (original federal question jurisdiction) and under 29 U.S.C. §621 (ADEA). Supplemental jurisdiction over the New York State law claims is conferred by 28 U.S.C. § 1367(a) and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. §296, et seq., as such claims are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5.      Venue is proper in this District because Defendants conduct business in this district, and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## THE PARTIES

6.      At all relevant times, Plaintiff Omeragic was resident of the City of New York, State of New York.

7.      Defendant Pinnacle Group is a limited liability company formed pursuant to the laws of the State of New York and maintaining an office at One Penn Plaza, New York, N.Y.

8.      Defendant Sherman is a limited liability company formed pursuant to the laws of the State of New York and maintaining an office at One Penn Plaza, New York, N.Y.

9.      Defendant GMP is a limited liability company formed pursuant to the laws of the State of New York and maintaining an office at One Penn Plaza, New York, N.Y.

10.     Upon information and belief, Sherman is controlled by Pinnacle Group.

11.     Upon information and belief, GMP is controlled by Pinnacle Group.

12.     Upon information and belief, Defendant Weiner is a principal and controlling person of Sherman.

13.     Upon information and belief, Defendant Weiner is a principal and controlling person of Pinnacle Group.

14.     Upon information and belief, Defendant Weiner is a principal and controlling person of GMP.

15.     Upon information and belief, Defendant Hirsch is a principal and controlling person of Sherman.

16.     Upon information and belief, Defendant Hirsch is a principal and controlling person of Pinnacle Group.

17.     Upon information and belief, Defendant Hirsch is a principal and controlling person of GMP.

18.     Upon information and belief, Sherman is an owner of the building located at 241-251 Sherman Avenue, New York, N.Y. (the "Building").

19.     Upon information and belief, GMP is an owner of the Building.

20.     Upon information and belief, the Building has approximately 76 residential units and approximately 4 commercial units.

21.     Upon information and belief,  at all relevant times, Pinnacle Group and/or Sherman and/or GMP have been the managing agents for the Building.

22.     Weiner is the manager and/or member and/or owner of Corporate Defendants, one of the ten largest shareholder/members of Corporate Defendants, and  is individually responsible for unpaid wages under the New York Limited Liability Company Law.

23.     Hirsch is the manager and/or member and/or owner of Corporate Defendants, one of the ten largest shareholder/members of Corporate Defendants, and  is individually responsible for unpaid wages under the New York Limited Liability Company Law.

24.     The Individual Defendants each are responsible for all personnel decisions made by the Corporate Defendants, including the setting and payment of salaries and other compensation.

25.     The Individual Defendants established policies for the Corporate Defendants, including employee pay policies.

26.     At all relevant times, Defendants have been and continue to be "employers" engaged in interstate "commerce" and in the production of goods for commerce within the meaning of the FLSA and have engaged in an enterprise whose annual volume of sales made or business done is not less than $500,000.00.

27.     At all relevant times, Defendants have engaged in transactions involving interstate commerce, including foreign banking transactions and Defendants' employees, including Plaintiff, have, and continue to, handle goods and materials that have been manufactured or produced outside of New York (including tools, cleaning materials, maintenance equipment and other items) that have moved in interstate commerce.

## FACTUAL BACKGROUND

28.     Plaintiff was employed as a Porter at the Building continuously from May 2015 through May 9, 2022.

29.     Plaintiff is 67 years of age.

30.    As the Building's Porter, Plaintiff has been on call 24 hours a day, 7 days a week, 365 days a year and has rendered services during such times.

31.    Plaintiff regularly works over forty hours per week but is not compensated for the hours he works in excess of forty hours per week, nor is he compensated at the overtime premium rate for all of the hours he worked in excess of 40 per week.

32.    Plaintiff has not been compensated in accordance with prevailing federal or state wage requirements for the number of units in the Building.

33.    As Porter, Plaintiff's regular job duties included cleaning and maintaining the Building, collecting and disposing of trash, responding to tenants' calls and general maintenance of the Building, including corridors, public spaces and apartments. ("Regular Work").  Plaintiff was also expected to be available twenty-four (24) hours a day ("On Call") to attend emergencies whenever such events arose, including on nights and weekends.

34.    During the time he has worked as Porter for the Building, Plaintiff has regularly worked from 7:00 am until 5:00 pm, 7 days a week, and for additional hours as needed.

35.    On average, Plaintiff regularly works approximately 70 hours per week, and, on occasion, significantly more hours.

36.    During the time he was employed at the Building, Plaintiff occupied a basement apartment (the "Apartment"), for the convenience of Defendants and so that Plaintiff would be available to work at any time 24 hours a day and 365 days a year.

37.    The Apartment was maintained by Defendants in a substandard, hazardous and unhealthy condition, unsuitable for use as a residential dwelling.

38.     During the time he was employed at the Building, Plaintiff was not afforded regular paid annual vacation days or sick days.

39.     In or about February 2022, Defendant requested vacation days from May 7, 2022 through May 27, 2022, consisting of two weeks paid vacation and one week unpaid vacation,  so that he could travel to Montenegro and visit his family following the death of his sister.

40.     On or about March 16, 2022, Hirsch approved Plaintiff's request for two weeks paid vacation only.

41.     On May 9, 2022, after Plaintiff departed on approved paid vacation, Sherman sent a notice to Plaintiff, signed by Weiner, advising Plaintiff that his employment was terminated, effective immediately, because Plaintiff had allegedly failed to properly clean and maintain the Building (the "Termination Letter")

42.     Although the Termination Letter stated that Plaintiff has received previous warnings, Plaintiff had not received any previous warnings, either written or verbal.

43.     The Termination Letter also demanded that Plaintiff immediately vacate the Apartment.

44.     At the time he was terminated, the Building Manager, Rasim Toskic, told Plaintiff that he also was terminated because he had not been authorized to take any vacation.

45.     Rasim Toskic's statement was false since Plaintiff's vacation had been approved by Hirsch.

46.     Upon information and belief, Hirsch and Weiner have engaged in a pattern of consciously avoiding the wage and overtime payment obligations mandated by the FLSA and NYSLL.

47.     Upon information and belief, Hirsch and Weiner each have previously been named as defendants in lawsuits instituted by employees charging failures to pay wages and overtime as required under the FLSA and NYSLL.

48.     Defendants knowingly and purposely evaded the requirements imposed by the FLSA and NYSLL for the payment of wages and overtime wages.

49.     During the time he was employed as Porter at the Building, Plaintiff has not been provided with any vacation days or sick days and has not received any compensation in lieu of vacation and sick days.

50.     Despite working well over forty hours per week throughout his employment with Defendants, Plaintiff was not paid for the hours he worked in excess of forty hours per week, nor was he paid at the proper premium rate for his work in excess of forty hours per week.

51.     Defendants have failed to pay wages at the rate required based upon the number of units in the Building.

52.     Defendants' failure and refusal to pay wages and overtime premiums to Plaintiff for hours worked in excess of forty hours per week has been willful.

53.     From in or about May 2015 through May 9, 2022,  Defendants failed to reimburse Plaintiff approximately $50,000.00 for Out-of-Pocket Expenses.

54.     During the period of Plaintiff's employment, from May 2015 through May 9, 2022, Defendants failed to pay Plaintiff any overtime premium for hours worked in excess of forty hours a week.

55.     In accordance with the New York Labor Law §195.1, since January, 2011, Defendants have been required, on an annual basis, to present for signature to each employee a wage notice, which had to contain the following wage rate information:  (i) the basis of the employee's wage rates, e.g., by the hour, shift, day, week, salary, piece commission or otherwise; (ii) the overtime rate of pay, if the employee is subject to overtime regulations; (iii)  whether  the employer  will  claim  allowances such  as  tips,  meals, and/or  lodging against  the  minimum wage; (iv)  the  employer's  name  and  any  "doing  business  as" names;  (v)  the  employer's address and mailing address, if different; and (vi) the employer's telephone number (the "Wage Notice").

56.     During his entire employment with Defendants, Plaintiff never received and never signed the Wage Notice or any document which might show the information required by NYLL §195.1.

57.     Defendants  were  aware  or  should  have  been  aware  that  this  practice  was  in violation of NYLL but continued to willfully engage in this unlawful practice.

58.     Upon information and belief, other personnel employed by Defendants at the Building, including the superintendent, are significantly younger than Plaintiff.

59.     Upon information and belief, Plaintiff was terminated from his employment at the Building because Defendants determined that he was old and wished to employ a younger individual as a Porter.

60.     Since Plaintiff was terminated, Defendants have employed a younger individual, "off of the books" to perform the services at the Building that previously were performed by Plaintiff.

61.     At all relevant times herein, the Corporate Defendants were and are controlled by the Individual Defendants.

62.     At all relevant times herein, the Individual Defendants acted for and on behalf of the Corporate Defendants, with the power and authority vested in them, as owners, members officers, agents, and employees of the Corporate Defendants, and acted in the course and scope of their duty and function as owners, agents, employees, and officers of the Corporate Defendants.

63.     At all relevant times herein, the Individual Defendants directly and/or through their agents, managed, handled, or were otherwise ultimately responsible for, the payroll and/or payroll calculations and policies of Corporate Defendants and all payments to Plaintiff.

64.     The Individual Defendants had control over the conditions of Plaintiff's employment, including his hiring and firing, his work schedules, the rates and methods of payment of his wages, and the maintenance of his employment records.

65.     At all relevant times herein, the Individual Defendants had operational control over the Corporate Defendants.

66.     As a matter of economic reality, Defendants are joint employers of Plaintiff; and, as a result, Defendants, individually and collectively, and jointly and severally, are liable for all claims made herein.

## **FIRST CLAIM FOR RELIEF**
### **(FLSA Violations against all Defendants)**

67.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 66 as if fully set forth herein.

68.    Plaintiff was a person covered by, and intended to benefit from, the provisions of the FLSA with respect to his work for Defendants.

69.    Pursuant to the FLSA, Plaintiff was and is entitled to certain overtime wages, and regular wages, which Defendants intentionally and willfully failed to pay in violation of such law.

70.    Plaintiff regularly worked in excess of forty (40) hours per week for Defendants and was On Call twenty-four (24) hours a day, but never received any form of additional compensation for his extra hours, either at his regular rate or at the overtime premium rate of one-and-a-half times his regular rate.

71.    At all relevant times hereto, Defendants have had and operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of knowingly and willfully failing and refusing to pay Plaintiff at one and a half times their regular rate of pay for all hours of work in excess of forty (40) hours per workweek, and willfully failing to keep accurate required records, in violation of the FLSA.

72.    Plaintiff seeks damages in the amount of his unpaid compensation, liquidated damages as provided by the FLSA, interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper

## SECOND CLAIM FOR RELIEF
### (NYLL Violations against all Defendants)

73.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 72 as if fully set forth herein.

74.    At all relevant times, Plaintiff has been a person covered by, and intended to benefit from, the provisions of the NYLL with respect to his work for Defendants.

75.    Pursuant to NYLL, Plaintiff was entitled to certain overtime wages, and regular wages, all of which Defendants intentionally and willfully failed to pay in violation of such law.

76.    Plaintiff regularly worked in excess of forty (40) hours per week for Defendants, but never received any form of additional compensation for his extra hours, either at his regular rate or at the overtime premium rate of one-and-a-half times his regular rate.

77.    Defendants failed to pay Plaintiff wages at the required rate based upon the number of units in the Building.

78.    Accordingly, Plaintiff seeks a judgment for unpaid regular wages, and unpaid overtime wages, such sums to be determined based upon an accounting of the hours worked by, and wages actually paid to Plaintiff, and the number of units in the Building, along with an award of liquidated damages, interest, reasonable attorneys' fees and costs, as provided for by the NYLL.

### THIRD CLAIM FOR RELIEF
### (Violation of New York Labor Law §195.1 against all Defendants)

79.    Plaintiff repeats and realleges each and every allegation previously made in paragraphs 1 through 78 as if fully set forth herein.

80.    Pursuant to New York Labor Law §195.1, employee employed by Defendants must receive for signature, on an annual basis, a Wage Notice setting forth (i) the basis of the employee's wage rates, e.g., by the hour, shift, day, week, salary, piece commission or otherwise; (ii) the overtime rate of pay, if the employee is subject to overtime regulations; (iii) whether the employer will claim allowances such as tips, meals, and/or lodging against the minimum wage; (iv) the employer's name and any "doing business as" names; (v) the employer's address and mailing address, if different; and (vi) the employer's telephone number.

81.     Plaintiff never received and never signed the Wage Notice and never received any other documents which might show the information required by NYLL §195.1.

82.     Defendants were aware or should have been aware that this practice was in violation of NYLL but continued to willfully engage in this unlawful practice.

83.     As a result of Defendants' violation of NYLL §195.1, Plaintiff is entitled to statutory damages of $25 or $50 per week, up to $2,500 or $5,000, as provided for by NYLL §195.1.

## FOURTH CLAIM FOR RELIEF
### (Age Discrimination in Violation of the ADEA)

84.     Plaintiff repeats and realleges each and every allegation previously made in paragraphs 1 through 83 as if fully set forth herein.

85.     Upon information and belief, Defendants terminated Plaintiff, as described above, because of Plaintiff's age.

86.     Defendants engaged in acts and omissions that were discriminatory, in particular, by terminating Plaintiff's employment on the basis of his age.

87.     The acts and omissions described in the above paragraphs constitute discriminatory acts and omissions and alternatively they provide evidence of discriminatory intent relevant to discriminatory acts and omissions.

88.     By virtue of the foregoing, Defendants, by the acts described in the above paragraphs, knowingly and unlawfully discriminated against Plaintiff on the basis of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. Defendant's violations of the ADEA described in the above paragraphs including willful acts and omissions, within the meaning of 29 U.S.C. § 626(b).

89.     Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory acts unless and until an agency or court grants relief.

90.     On August 24, 2022, Plaintiff advised the U.S. Equal Employment Opportunity Commission of his intention to file this Complaint.

91.     No previous application has been made for relief associated with this charge.

92.     Plaintiff affirms he has not commenced any other civil action, nor does he have an action pending before any administrative agency, under any state or local law, based upon the same unlawful discriminatory practices detailed in this charge.

### FIFTH CLAIM FOR RELIEF
**(Age Discrimination in Violation of the NYSHRL)**

93.     Plaintiff repeats and realleges each and every allegation previously made in paragraphs 1 through 92 as if fully set forth herein.

94.     Plaintiff was employed in the State of New York and terminated from such employment by Defendants in the State of New York.

95.     Upon information and belief, Plaintiff's age was a determining factor in Defendants' decision to terminate Plaintiff.

96.     Termination of Plaintiff by Defendants was discriminatory and based upon Plaintiff's age.

97.     Defendants, by the discriminatory acts alleged in the above paragraphs, violated the New York State Human Rights Law (Executive Law, Article 15), Section 296 et seq.

98.     Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts unless and until this Court grants relief.

99.     No previous application has been made for relief associated with this charge.

100.    Plaintiff affirms he has not commenced any other civil action, nor does he have an action pending before any administrative agency, under any state or local law, based upon the same unlawful discriminatory practices detailed in this charge.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable in this action.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

    a.  An award of unpaid wages at the overtime wage rate due under the FLSA.

    b.  An award of liquidated damages as a result of Defendants' failure to pay wages at the overtime wage rate pursuant to the FLSA.

    c.  An award of unpaid wages at the overtime wage rate due under the NYLL.

    d.  An award of liquidated damages as a result of Defendants' failure to pay wages at the required rate, failure to pay wages at the overtime wage rate,  failure to provide accurate wage notices, and failure to provide accurate wage statements pursuant to the NYLL.

    e.  An award of damages based upon Defendants' violation of the ADEA

    f.  An award of damages based upon Defendants' violation of the NYSHRL

g.   Prejudgment and post-judgment interest.

h.   Statutory damages of $25 or $50 per week up to $2,500 or $5,000 as provided

for by NYLL §195.1.

i.   An award of costs and expenses, including reasonable attorneys' fees.

j.   Together with such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        September 27, 2022

Hartley T. Bernstein, Esq.
Hartley T. Bernstein, Esq.
BERNSTEIN CHERNEY LLP
955 Park Avenue, Fifth Floor
New York, N.Y. 10028
(2120 381-9684 – Phone
(646) 304-9535 -Facsimile
hbernstein@bernsteincherney.com

*Attorneys for Plaintiff*

-16-